ACCEPTED
15-25-00116-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/11/2025 6:32 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00116-CV

IN THE FIFTEENTH COURT OF APPEALS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/11/2025 6:32:50 PM
CHRISTOPHER A. PRINE
Clerk

KEN PAXTON, ET AL.,
*Appellants,*

v.

DELIA GARZA, ET AL.,
*Appellees.*

On Direct Appeal from the
419th Judicial District Court, Travis County, Texas
No. D-1-GN-25-003445, Consolidated With
No. D-1-GN-25-003531 & No. D-1-GN-25-003581

## APPELLEES' REPLY TO APPELLANTS' RESPONSE TO APPELLEES' EMERGENCY MOTION FOR TEMPORARY RELIEF

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

Temporary relief is necessary to maintain the status quo while this Court considers Appellants' appeal. Appellants' response amounts to a sweeping assertion that his authority is effectively unlimited and that any delay in producing reports (that were never previously sought) somehow constitutes irreparable harm. The Attorney General offers no evidence—none—that a temporary delay will cause any concrete injury, especially when Appellants will be able to obtain the requested reports should they ultimately prevail on this appeal.

By contrast, Appellees face immediate and irreparable harm under the trial court's detailed findings: hundreds of hours of diverted staff time, disclosure of

confidential information, and the threat of removal from office in a *quo warranto* action. Appellees sought relief just six weeks after the rules took effect, won a temporary injunction after a full evidentiary hearing, and now seek only to preserve the status quo while this Court reviews the temporary injunction order.

The Attorney General claims broad rulemaking power under a statute that says nothing about rules. Appellees are not asking this Court to resolve those questions now but rather before they are required to comply with the Challenged Rules. Appellants' opening brief is due in 17 days. TEX. R. APP. P. 38.6(a)(2).

This is precisely what temporary appellate relief is for. At this stage, Appellees need not prove they will win—only that Appellees have demonstrated— and the Attorney General has not refuted—that Appellees' challenge raises serious legal questions and that the equities favor a continued stay. *See In re Tex. Educ. Agency*, 619 S.W.3d 679, 683–84 (Tex. 2021).

## ARGUMENT

Preliminarily, the Attorney General's assertion that Appellees "manufacture[d] an emergency" instead of "prepar[ing] to comply," Resp. at 3, is not only irrelevant, it is belied by the record.

Appellees began preparing to comply with the Challenged Rules before they took effect and told the Attorney General that producing the requested reports is extraordinarily burdensome. Evidence presented at the temporary injunction hearing establishes that Appellees already have spent hundreds of hours preparing

2

the requested reports. 2RR74:5-22. Before Appellees requested that the Attorney General agree to temporary relief in this Court, Appellees asked the Attorney General to postpone or extend the reporting deadlines either during the pendency of litigation or until September 1, but he refused. 2RR148:3-7.

Regardless, Appellees would have needed temporary relief from this Court no matter when they filed their lawsuits. Appellees brought suit a mere six weeks after the Challenged Rule took effect on April 2, 2025. Then, after extensive conferral with the Attorney General, they noticed the temporary injunction hearing shortly thereafter. Even had they filed earlier, less than three months between the effective date and due date of the first report would never have been enough time to fully litigate the validity of the rule. And, in the end, it was the Attorney General who waited until 4:00 pm June 27, 2025—the Friday prior to the Monday compliance deadline—to file his notice of appeal.

## I.    The Attorney General glosses over the Rule 29.3 balancing standard, which prioritizes "preserv[ing] the parties' rights."

The Attorney General misapplies the Texas Supreme Court's balancing test. Even where "the State has an intrinsic right to enforce its own laws," *In re State*, 711 S.W.3d 641, 645 (Tex. 2024) (cleaned up), the balancing of harms is "a required aspect of a court's effort to **preserve the parties' rights pending appeal**." *Id*. at 645 (emphasis added). Here, the Attorney General acknowledges Appellees have at

least some rights at stake. (*E.g.*, Resp. at 25–26 (the right and responsibility to prosecute cases)).

A temporary injunction applicant "is not required to establish that it will prevail on the final trial." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (citing *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968)). And the decision on this motion does not even decide the merits of the temporary injunction—that is what the appeal is for. This is why, in *In re State*, the Texas Supreme Court made "no definitive statement about the merits" but instead found temporary relief justified when the movant simply "raised serious doubt" about the validity and constitutionality of the actions that the movant sought to stay. 711 S.W.3d at 646.

The balancing of harms between the various parties has two elements that are critical here. First, whether damages or other harm can "feasibly be recouped if it is later determined" that the harmful action was invalid is part of asking whether harms are "irreparable" and thus entitled to additional weight. *Id.* at 647. Second, when a governmental entity's constitutional rights are impacted, that is where the "status quo" question is particularly helpful, too—favoring a stay of state action that would change another governmental unit's "manner of governance" from its "last, actual, peaceable non-contested status" before the lawsuit. *Tex. Educ. Agency*, 619 S.W.3d at 683–84.

Appellants do not address these factors or even mention *In re Texas Education Agency.* They are dispositive here, if the traditional balance weighing is not enough.

4

## II. Appellants show no harm and ignore Appellees' harm.

The balance of harms weighs *heavily* in Appellees' favor. At the temporary injunction hearing, Appellees presented substantial evidence that they would be irreparably harmed by compliance with the Challenged Rules, which the Attorney General neither contradicted nor countered. Rather, the Attorney General presents the legally incorrect view that government officials are irreparably harmed whenever they cannot impose their view of the law.

### A. The Attorney General has no evidence of harm.

Typically, "[w]hen the State files suit to enjoin *ultra vires* action by a local official, a showing of likely success on the merits is sufficient to satisfy the irreparable-injury requirement for a temporary injunction." *State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020). Here, however, **Appellees** are the government officials bringing an *ultra vires* action, and Appellees have shown a likelihood of success on the merits, as the district court found. Allowing the Attorney General to invoke this doctrine in defending **against** an *ultra vires* claim would shield the Attorney General from *ultra vires* actions even if he could show a likelihood of success on the merits, which he certainly has not shown. Plus, there has been no violation of law, as the Attorney General has claimed, for which he needs any enforcement. The precise reason that Appellees need the temporary injunction and stay is so that the Attorney cannot injure *them* in violation of the law.

Simply stated, the burden of having to delay enforcement of a brand-new administrative rule, for which Appellees present a serious challenge, counts for little against the thousands of personnel hours, millions of dollars, and confidential information which the Appellees are poised to lose. Moreover, the Attorney General does nothing to cast doubt on the substantial irreparable injuries that Appellees have demonstrated. Nor did he make any evidentiary record below. Rather, the Attorney General purports to create his own record on appeal with his claim that "the Montgomery County District Attorney[] has already complied with the initial reporting requirements" to "suggest[] that they are far less burdensome than [Appellees] allege." Resp. at 3. But Montgomery's County's alleged report is not in the record, and Appellees have reason to believe that it is far from complete and identifies many of the same burdens outlined in the testimony by the Appellees, which, of course, is in the record. That is to say, the Attorney General's reference to an out-of-record report allegedly produced by just one of the thirteen affected counties proves nothing.

## B. Appellees showed abundant and unrefuted evidence of harm.

The district court found that Appellees demonstrated irreparable harm including, in addition to interference with their constitutional prosecutorial responsibilities, (1) the expenditure of "a significant amount of resources, personnel time, and taxpayer funds," which cannot be recovered as damages, and (2) the disclosure of confidential information of various types. CR393.

Appellees' evidence of harm was presented via many declarations and testimony at the temporary injunction hearing. To give the Court a flavor:

Danny Smith of Travis County testified that his team has spent "hundreds of hours just in the last two months" preparing to comply. 2RR74:5-22; *see also* CR94. "[B]y focusing on [compliance] we are not focusing on what we can be doing for the actual criminal cases that are filed in our office." 2RR82:24-83:13. Holly Taylor of Travis County added that "[r]ecently" she "ha[d] dedicated most of [her] working hours to implementing methods for data and document collection and retention to comply with the challenged rules." So has Williamson County District Attorney Shawn Dick. (Mot. App'x Tab C-19 at § 14.). Amy Lechuga of El Paso County "estimate[d] that accurately completing the initial report will take over 12,000 hours of staff and attorney time," and that the county would "need to hire, at minimum, one software developer, two secretaries, one attorney, and one functional data analyst permanently on staff." CR109-10. Marsha Edwards of Dallas County explained that compliance would "divert staff away from their core roles and responsibilities." CR256. Joshua Reiss declared that Harris County "would have to hire 10 new, fulltime employees dedicated to a specialized 'OAG Reporting Unit,'" CR272, at an "initial cost . . . in excess of $11 million over the next five years," CR272-73. Jamissa Jarmon explained that Bexar County would hire a third-party contractor because Bexar County's IT department lacks "the capacity, software, or personnel to review and search through such a large volume

7

of emails." CR265-266. Fort Bend County would likely do the same thing. (Tab C-18 at §§ 15–16.) Williamson County already has hired an outside contractor. (Tab C-19 at § 14.)[1]

The same evidence demonstrates that Appellees would be irreparably injured by the forced disclosure of legally protected confidential information. Holly Taylor specified the categories of confidential information "that [are] commonly found in [case] files" including "victim contact information, statements, and pseudonyms; DNA testing of rape kits; graphic photos; grand jury testimony; identities of confidential informants; criminal history information; mental health and substance abuse treatment records; CPS records; and defense counsel's confidential communications with prosecutors." CR100. Alma Trejo provided a very similar list. CR105-06. Joshua Reiss stated "federal agencies will disapprove" of certain required disclosures. CR275. The District Attorneys for Williamson and Fort Bend Counties also expressed legal and ethical reservations of turning over materials protected by existing federal and state laws. (Tab C-19 at § 8; Tab C-18 at § 12.).

---

[1]   Similar population-proportionate testimony was provided by Williamson County District Attorney Shawn Dick, (Tab C-19 at § 14); Fort Bend County District Attorney Brian Middleton, (Tab C-18 at § 13); Masha Edwards of Dallas County Criminal District Attorney's Office, CR265; Jamissa Jarmon of Bexar County District Attorney's Office, CR265; Alma Trejo of El Paso County Attorney's Office, CR104; Amy Lechuga, CR109-110; and Danny Smith, 2RR119:8-20.

**III.** **As the trial court found, Appellees raise serious questions concerning the validity of the Challenged Rules.**

Discussion of the merits here is necessarily abbreviated, given the procedural posture. But the Attorney General's merits discussion is wrong in several ways.

**A.** **The Attorney General lacks the authority to adopt the Challenged Rules.**

The Attorney General acknowledges, as he must, that an agency rule is invalid if the agency was not given authority to adopt the rule. *See* Response at 9. However, he claims that Section 41.006 provides him with either express or implied rulemaking authority. Neither is true.

The Attorney General first argues that Section 41.006 "sounds suspiciously like an *express* grant of authority." *Id.* at 9. But sounding "like" an express grant of authority (whatever that means) is not an express grant of authority. There is no question that Section 41.006 says nothing about adopting rules or engaging in rulemaking, unlike the 20+ statutes that expressly authorize the Attorney General to do so in discrete areas by using clear, unmistakable language. The Texas legislature knows how to confer rulemaking authority on the Attorney General when it wants to do so. It chose not to do so here. "[E]very word excluded from a statute must also be presumed to have been excluded for a purpose." *Cameron v. Terrell* & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981).

The Attorney General argues, next, that "even if the statutory language did not confer an *express* grant of rulemaking authority, there can be little question that

such rulemaking authority is *implied.*" Response at 9. As administrative law professor Ron Beal explains in his amicus brief, no court in Texas has ever held that an agency may adopt a rule when the agency was not given express rulemaking authority. *See* R. Beal's Amicus at 5.

The Attorney General cites *Pruett v. Harris County Bail Bond Board*, 249 S.W.3d 447, 452 (2008) for *implied* rulemaking authority. *See* Response at 9-10. But *Pruett* is an *express* rulemaking authority case (like all other such cases). The enabling statute in *Pruett* authorized the government agency to "'*adopt* and post *rules* necessary to implement this chapter.'" 249 S.W.3d 447, 453 (Tex. 2008) (emphasis added). The Attorney General misconstrues *Pruett* by conflating two separate powers—the power to promulgate a rule in the first place (which must be expressly given) and the scope of that power once given (which may be implied). As the Texas Supreme Court explained, "When a statute expressly authorizes an agency to regulate an industry, it implies the authority to promulgate rules and regulations necessary to accomplish that purpose." *Id.* The question in *Pruett* was not the existence of but the "scope of the Board's rule-making authority." *Id.* at 9.

The Attorney General also cites *Public Utility Commission of Texas (PUC) v. City Pub. Serv. Bd. of S.A.*, 53 S.W.3d 310 (Tex. 2001). *See* Response at 9. Like *Pruett*, *PUC* is an express rulemaking authority case. The enabling statute in *PUC* states, "'[t]he Commission *shall adopt rules* . . . relating to wholesale transmission services, rates, and access.'" 53 S.W.3d at 313 (emphasis added). The Texas Supreme Court

10

in *PUC* explained that rulemaking authority must be expressly given: "As we have said before, the PUC is a creature of the legislature and has no inherent authority. This is true of every state administrative agency and as a result every such agency has only those powers *expressly* conferred upon it by the Legislature." *Id.* at 316 (internal quotations omitted). The court also explained that implied powers come into play only where there is first an express conferral of authority: "The basic rule is that a state administrative agency has only those powers that the legislature *expressly* confers upon it. But an agency may also have *implied* powers that are reasonably necessary to carry out the *express* responsibilities given to it by the legislature." *Id.* at 315 (emphasis added).

In short, the Attorney General overstates the "concept of implied rulemaking authority." Response at 10. Professor Beal—who has no stake in this litigation—refutes the Attorney General's position more fully in his amicus brief. *See* R. Beal's Amicus at 1-5.

* * * *

The statutory history of Section 41.006 confirms that the Attorney General lacks the power to adopt the Challenged Rule—a point the Attorney General fundamentally misunderstands.

Originally, a **separate** provision gave the Attorney General the power to require reports, while the predecessor to Section 41.006 was merely a companion provision that obligated the district and county attorneys to cooperate. TEX. CODE

11

OF CRIM. PRO. title. 1, ch. 2, sec. I, art. 30, (1879); *id.* title. 1, ch. 2, sec. II, art. 40. The empowering provision only allowed the Attorney General to demand "information necessary for his compliance with" his own statutory obligation to make regular reports to the Governor. *Id.* title. 1, ch. 2, sec. I, art. 29, 30 (1879). Then in the 1925 codification, the predecessor to Section 41.006 and the provision requiring reports to the Governor were moved, while the empowering provision was eliminated. TEX. REV. CIV STAT. title 70, ch. 4, art. 4413 (1925), *id.* title 15, sec. 3, art. 333.

This history underscores the absurdity of reading the Section 41.006 as a grant of rulemaking authority to the Attorney General. The Attorney General's position in this case assumes that by *repealing* the empowering provision in a recodification, the legislature radically *expanded* the information that the Attorney General was permitted to demand. That is highly implausible.[2]

## B.    The Challenged Rules exceed the Scope of Section 41.006.

Even assuming the Attorney General had the authority to adopt some rules under Section 41.006 (which he does not), it still would not authorize *this* rulemaking. "In deciding whether a particular administrative agency has exceeded

---

[2]   The committee analysis of the House Judiciary Committee also confirms the lack of authority. *See* H. Comm. on Judiciary, Bill Analysis at 4, Tex. S.B. 1228, 69th R.S. (1985) (emphasis added) ("It is the opinion of this committee that this bill *does not delegate rulemaking authority* to any state officer, agency, department, or institution."). The Attorney General dismisses this key point as "irrelevant" because it involves "debate which took place on the [law's] passage." Response at 12. But there was no "debate" on rulemaking authority, just a clear statement from the Judiciary Committee that it was not conferred.

its rule-making powers, the determinative factor is whether the rule's provisions are 'in harmony with the general objectives of the Act involved.'" *Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008) (quoting *Gerst v. Oak Cliff Sav. & Loan Ass'n,* 432 S.W.2d 702, 706 (Tex.1968)). There is a fundamental disconnect between a statute requiring ad hoc reports and an entirely new regulatory scheme with an oversight committee empowered to remove officials from office for any perceived violation thereof.

The Challenged Rules are also invalid because they "impose[] additional burdens, conditions, or restrictions in excess of . . . the relevant statutory provisions." *Tex. St. Bd. of Examiners of Marriage & Family Therapists v. Tex. Med. Assoc.*, 511 S.W.3d 28, 33 (Tex. 2017). For example, Section 41.006 says **nothing** about penalties for noncompliance, including that noncompliance would constitute "official misconduct," so the burden imposed by the threat of removal is plainly "in excess of" the statute. 1 TEX. ADMIN. CODE §§ 56.8. It is no answer to say that the Attorney General already has *quo warranto* power, because there can be no doubt that Section 56.8 redefines "official misconduct"—downgrading it from "intentional, unlawful behavior," TEX. LOC. GOV'T CODE § 87.011, to a form of strict liability for any violation, "***without limitation***." 1 TEX. ADMIN. CODE § 56.8 (1) & (2) (emphasis added). Other excesses exist too, such as the fact that Section 41.006 requires "reports" of "information," not entire case files or internal correspondence.

13

## C. The Challenged Rules violate the separation of powers.

On this point the Attorney General attempts to downplay his demands. But Appellees present a serious question that the Challenged Rules violate the Separation of Powers Clause by preventing the prosecuting attorneys from "*effectively* exercise[ing] [their] constitutionally assigned powers." *Martinez v. State*, 323 S.W.3d 493, 501 (Tex. Crim. App. 2010) (emphasis in original). This is because the Challenged Rules' reporting requirements compel compiling "all correspondence" and "entire case files" into collections that would otherwise not exist.[3]

## D. The regulations lack a reasoned justification.

The absence of any "reasoned justification" is apparent on inspection of the Texas Register entry adopting 1 TEX. ADMIN. CODE §§56.1-56.10. CR182. As demonstrated above, the Attorney General failed to give a reasoned justification for the compliance costs, the transfer of highly confidential information, or for deriving rulemaking authority from Section 41.006. And his claim that the population requirement "will indicate trends for all counties in the state," CR186, can only be pretextual because there is no basis for assuming the largest counties

---

[3] The Supreme Court granted temporary relief in a case the Attorney General cites as analogous. *In re Tex. House of Representatives*, 704 S.W.3d 830, 832 (Tex. 2024). That is because a dispute concerning "separation of powers at a high level" required the district court's injunctive action "to prevent the case from becoming moot." *Id.* at 832 (Young, J., concurring, in grant of temporary relief).

are meaningfully representative of trends throughout Texas. As stated in his press release regarding the Challenged rules, this requirement is simply an attempt to collect all the ostensibly "rogue" prosecutors without stating that approach in the Texas Register. CR50.

**PRAYER**

Appellees pray that this Court grant its motion for temporary relief.

Respectfully submitted,

[Signatures Beginning on Next Page]

/s/ Leslie W. Dippel
Leslie W. Dippel
State Bar No. 00796472
Leslie.Dippel@traviscountytx.gov
Todd A. Clark
State Bar No. 04298850
Todd.Clark@traviscountytx.gov
Cynthia W. Veidt
State Bar No. 24028092
Cynthia.Veidt@traviscountytx.gov
Travis County Attorneys
**DELIA GARZA**
**TRAVIS COUNTY ATTORNEY**
P.O. Box 1748
Austin, TX 78767
Tel.: (512) 854-9513
Fax: (512) 854-4808

*Counsel for Appellees Delia Garza, in her Official Capacity as Travis County Attorney, José P. Garza, in his Official Capacity as Travis County District Attorney, and Travis County*


/s/ Justin C. Pfeiffer
Justin C. Pfeiffer
State Bar No. 24091473
jpfeiffer@gavrilovlaw.com
Gavrilov & Brooks, PC
P.O. Box 56632
Houston, TX 77256
Tel.: (832) 312-7900

*Attorney for Appellee Brian M. Middleton, in his Official Capacity as Fort Bend County District Attorney (268th Judicial District)*


/s/ Bradley W. Snead
Jonathan G.C. Fombonne
Deputy County Attorney & First Assistant
State Bar No. 24102702
Jonathan.Fombonne@harriscountytx.gov
Tiffany S. Bingham
Managing Counsel
Affirmative & Special Litigation Division
State Bar No. 24012287
Tiffany.Bingham@harriscountytx.gov
Christopher Garza
Deputy Division Director
Affirmative & Special Litigation Division
State Bar No. 24078543
Christopher.Garza@harriscountytx.gov
Office of the Harris County Attorney
**CHRISTIAN D. MENEFEE**
**HARRIS COUNTY ATTORNEY**
1019 Congress Plaza, 15th Floor
Houston, TX 77002
Tel.: (713) 274-5101
Fax: (713) 755-8924

Bradley W. Snead
State Bar No. 24032706
snead@wrightclosebarger.com
Michael Adams-Hurta
State Bar No. 24097860
hurta@wrightclosebarger.com
**WRIGHT CLOSE & BARGER, LLP**
One Riverway, Suite 2200
Houston, Texas 77056
Tel.: (713) 572-4321
Fax: (713) 572-4320

*Counsel for Appellees District Attorney Sean Teare and Harris County*

16

/s/ Bernardo Cruz
Christina Sanchez
El Paso County Attorney
State Bar No. 24062984
Ch.sanchez@epcountytx.gov
Bernardo Rafael Cruz
Assistant County Attorney
State Bar No. 24109774
b.cruz@epcountytx.gov
**CHRISTNA SANCHEZ**
**EL PASO COUNTY ATTORNEY**
320 S. Campbell St., Suite 200
El Paso, TX 79901
Tel.: (915) 273-3247

*Counsel for Appellees El Paso County District Attorney James Montoya, El Paso County Attorney Christina Sanchez, and El Paso County*


/s/Michael Satin
Alexandria Oberman
State Bar No. 24131555
aoberman@milchev.com
Michael J. Statin
(*pro hac vice* application forthcoming)
msatin@milchev.com
Laura G. Ferguson
(*pro hac vice* application forthcoming)
lferguson@milchev.com
**MILLER & CHEVALIER CHARTERED**
900 16th Street, NW
Washington, DC 20006
Tel.: (202) 626-5800
Fax: (202) 626-5801

*Counsel for Appellees Criminal District Attorney John Creuzot; Dallas County; Criminal District Attorney Joe Gonzales; and Bexar County*


/s/Randy T. Leavitt
C. Robert Heath
State Bar No. 09347500
bheath@bickerstaff.com
**BICKERSTAFF HEATH DELGADO ACOSTA**
1601 S. Mopac Expy., Suite 400
Austin, TX 78746
Tel.: (512) 404-7821

Randy T. Leavitt
State Bar No. 12098300
randy@randyleavitt.com
**LAW OFFICE OF RANDY T. LEAVITT**
1301 Rio Grande St.
Austin, TX 78701
Tel.: (512) 476-4475


*Attorneys for Appellee Shawn W. Dick in his Official Capacity as Williamson County District Attorney (26th Judicial District)*

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Alysa Slocum on behalf of Brad Snead
Bar No. 24049835
slocum@wrightclosebarger.com
Envelope ID: 103056279
Filing Code Description: Other Document
Filing Description: Appellees' Reply In Support of Appellees' Emergency Motion for Temporary Relief
Status as of 7/14/2025 7:02 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher Garza | 24078543 | christopher.garza@harriscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Cynthia Veidt | 24028092 | cynthia.veidt@traviscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Christina Sanchez | 24062984 | christina.sanchez@epcounty.com | 7/11/2025 6:32:50 PM | SENT |
| Jonathan Fombonne | 24102702 | jonathan.fombonne@harriscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 7/11/2025 6:32:50 PM | SENT |
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 7/11/2025 6:32:50 PM | SENT |
| Tiffany Bingham | 24012287 | tiffany.bingham@harriscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 7/11/2025 6:32:50 PM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 7/11/2025 6:32:50 PM | SENT |
| Joshua Woods | | woods@wrightclosebarger.com | 7/11/2025 6:32:50 PM | SENT |
| Bradley W.Snead | | snead@wrightclosebarger.com | 7/11/2025 6:32:50 PM | SENT |
| Michael Adams-Hurta | | hurta@wrightclosebarger.com | 7/11/2025 6:32:50 PM | SENT |
| Jacob Beach | | Jacob.Beach@oag.texas.gov | 7/11/2025 6:32:50 PM | SENT |
| Ben Mendelson | | Ben.Mendelson@oag.texas.gov | 7/11/2025 6:32:50 PM | SENT |
| Cynthia  W.Veidt | | cynthia.veidt@traviscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| William  H. Farrell | | bill.farrell@oag.texas.gov | 7/11/2025 6:32:50 PM | SENT |
| Leslie  W. Dippel | | Leslie.Dippel@traviscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Todd A. Clark | | Todd.Clark@traviscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Cynthia  W. Veidt | | Cyntia.Vedt@traviscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Jonathan  G.C. Fombonne | | Jonathan.Fombonne@harriscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Tiffany  S. Bingham | | Tiffany.Bingham@harriscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Christopher  Garza | | Christopher.Garza@harriscountytx.gov | 7/11/2025 6:32:50 PM | SENT |

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Alysa Slocum on behalf of Brad Snead
Bar No. 24049835
slocum@wrightclosebarger.com
Envelope ID: 103056279
Filing Code Description: Other Document
Filing Description: Appellees' Reply In Support of Appellees' Emergency
Motion for Temporary Relief
Status as of 7/14/2025 7:02 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Christopher  Garza | | Christopher.Garza@harriscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Justin  C. Pfeiffer | | jpfeiffer@gavrilovlaw.com | 7/11/2025 6:32:50 PM | SENT |
| Christina  Sanchez | | Ch.sanchez@epcountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Bernardo  Rafael Cruz | | b.cruz@epcountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| C.  RobertHeath | | bheath@bickerstaff.com | 7/11/2025 6:32:50 PM | SENT |
| Randy T. Leavitt | | randy@randyleavitt.com | 7/11/2025 6:32:50 PM | SENT |
| Alexandria  Oberman | | aoberman@milchev.com | 7/11/2025 6:32:50 PM | SENT |
| Michael  J. Statin | | mstatin@milchev.com | 7/11/2025 6:32:50 PM | SENT |
| Laura  G. Ferguson | | lferguson@milchev.com | 7/11/2025 6:32:50 PM | SENT |
| William H. Farrell H.Farrell | | bill.farrell@oag.texas.gov | 7/11/2025 6:32:50 PM | SENT |
| Leslie W.Dippel | | leslie.dippel@traviscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Leslie W.Dippel | | leslie.dippel@traviscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Bradely W.Snead | | snead@wrightclosebarger.com | 7/11/2025 6:32:50 PM | SENT |
| Bernardo Cruz | | b.cruz@epcountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Bernardo Cruz | | b.cruz@epcountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Bernardo Cruz | | b.cruz@epcountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Alexandria Oberman Oberman | | aoberman@milchev.com | 7/11/2025 6:32:50 PM | SENT |
| Alexandria Oberman | | aoberman@milchev.com | 7/11/2025 6:32:50 PM | SENT |
| Alexandria Oberman | | aoberman@milchev.com | 7/11/2025 6:32:50 PM | SENT |
| Melissa Contreras | | m.contreras@epountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Isela Baeza | | i.baeza@epcountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Isela Jones | | carl.jones@epcountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Pamela Lopez | | Pam.Lopez@epcountytx.gov | 7/11/2025 6:32:50 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Alysa Slocum on behalf of Brad Snead
Bar No. 24049835
slocum@wrightclosebarger.com
Envelope ID: 103056279
Filing Code Description: Other Document
Filing Description: Appellees' Reply In Support of Appellees' Emergency Motion for Temporary Relief
Status as of 7/14/2025 7:02 AM CST

Case Contacts

| Pamela Lopez | | Pam.Lopez@epcountytx.gov | 7/11/2025 6:32:50 PM | SENT |
|---|---|---|---|---|
| Amy Pollock | | amy.pollock@traviscountytx.gov | 7/11/2025 6:32:50 PM | SENT |
| Michael J. Satin | | msatin@milchev.com | 7/11/2025 6:32:50 PM | SENT |